UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| v. | § CRIM. NO. SA-11-CR-593-XR |
| | § |
| | § |
| MIGUEL CANALES, | § |

**ORDER**

On this day came on to be considered Defendant's motion to suppress (dkt. no. 43). A hearing was held on February 21, 2012.

It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause. *United States v. Shugart*, 117 F.3d 838, 846 (5th Cir.), *cert. denied*, 522 U.S. 976 (1997). Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense. *Id.* (quotations and citations omitted).

In this case a DEA agent, Mark Galan, became aware that Elvia Vidaure was selling methamphetamine. On June 30, 2011, he arranged to purchase a pound of methamphetamine from her. Ms. Vidaure stated she needed to obtain the drugs from an individual or individuals in Poteet, Texas.

On July 7, 2011, Vidaure called Galan and informed him that she had the drugs. They arranged to meet at a restaurant near IH 35 and S.W. Military Drive in San Antonio, Texas. The DEA agents set up surveillance at the restaurant and a nearby Lowe's parking lot. Officers saw

1

Vidaure arrive at the restaurant in a black Honda. Officers also saw that the vehicle was driven by a male, later identified as the Defendant, Miguel Canales.

Galan called Vidaure and requested that they meet at the Lowe's parking lot. Canales exited the vehicle, stayed at the restaurant location, and Vidaure moved to the driver's seat and drove the car to the Lowe's parking lot. When she arrived at the Lowe's parking lot, she encountered Galan and showed him the drugs, which were placed inside a container similar to an Armor All cleaning wipes container. Thereafter, she was arrested and read her *Miranda* warnings. She agreed to cooperate and disclosed that the drugs belonged to the person at the restaurant and that he had more drugs at his home. Thereafter, Defendant Canales was arrested.

After he was under arrest, handcuffed and sitting in the front of the police vehicle, Defendant Canales verbally agreed to a search of his home. He also signed a consent form which stated he had "been asked to permit special agents of the [DEA] to search" his home, he had "not been threatened, nor forced in any way" and that he "freely consent[s] to this search." The search discovered additional small amounts of methamphetamine and a pistol.

Probable Cause existed for Defendant's arrest

The totality of facts and circumstances within the agents' knowledge at the moment of Defendant's arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense. The agents were aware that Vidaure was relying upon one or more individuals to supply the drugs. The agents saw the Defendant arrive to the predetermined meeting location with Vidaure. Once Vidaure was arrested, she disclosed to the agents that Defendant Canales was the owner of the drugs.

The Defendant argues that Vidaure was not a reliable informant upon which the agents could

rely upon. The agents, however, were not relying upon her as an informant, but rather an accomplice to a crime who was providing self-incriminating information.

Search of the Home

Warrantless searches are unconstitutional unless they meet one of a limited number of exceptions. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). One exception is a search conducted pursuant to voluntary consent. *Id.*

Courts examine six factors to determine the voluntariness of consent. *Jenkins*, 46 F.3d at 451. The six factors include (1) the voluntariness of the defendant's custodial status, (2) whether the police engaged in coercive conduct, (3) the extent and degree of the defendant's cooperation with the police, (4) the defendant's knowledge of his right to refuse consent, (5) the defendant's level of intelligence and education, and (6) the belief of the defendant that a search will not reveal incriminating evidence. *Id.* "[N]o single factor is dispositive or controlling of the voluntariness issue." *U.S. v. Olivier–Becerril*, 861 F.2d 424, 426 (5th Cir. 1988). Instead, "[c]onsent will be found voluntary if after considering all the circumstances then obtaining, it may be established that it was 'the product of an essentially free and unconstrained choice by its maker.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

This Court finds that consent was voluntarily given by the Defendant. Although the Defendant was in custody, there was no evidence any coercive police procedures were used. Defendant admitted in writing that he had "not been threatened nor forced in any way." Prior to his providing consent he was given his *Miranda* warnings and acknowledged understanding them. He was cooperative with the agents. There was no evidence that he lacked intelligence or education. He acknowledged to the agents that some contraband would be found at his home.

Defendant relies upon a recent Fifth Circuit opinion, *U.S. v. Zavala*, 2012 WL 277969 (5th Cir. 2012) to support his argument that his consent was not freely given. In that case Zavala was stopped for a motor vehicle violation. The DPS Trooper then suspected that the vehicle had contraband. Zavala was seated in the passenger seat of the police cruiser while the trooper conducted his investigation. After learning that Zavala had a past criminal history the trooper stated: "I'm going to go ahead and take you to the checkpoint sir. That way you won't waste any more time here ... and if the dog hits I'm going to have to search your vehicle. Ok?" Thereafter, they traveled approximately 25 miles to the checkpoint. The Court concluded that a reasonable person would not feel that he was free to refuse the trooper's "request" to follow him. As stated above, however, the facts of this case are very different. The Defendant was already in custody and gave consent to search his home both verbally and in writing after being given his *Miranda* warnings.

## Conclusion

Defendant's motion to suppress (dkt. no. 43) is denied.

It is so ORDERED.

SIGNED this 21st day of February, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE